## EMPTYING SEWER IN STREAM ON PRIVATE LAND. °

[Circuit Court of Lucas County.]

ALICE M. WHITNEY ET AL V..THE CITY OF TOLEDO ET AL.

Decided, October 18, 1906.

*Sewers—Construction of, in Road as a Drain for Surface Water—Pollution of Stream on Private Land—Power of Public Authorities—Rights of Injured Private Owner—Appropriation—Injunction—Costs.*

1. The use of a public road for the purpose of carrying a sewer beyond the limits of a municipality to a suitable point for discharging its contents into a water course, can not be interfered with by an adjacent property owner, where the use of the sewer is restricted to surface or storm water, and its construction has been duly authorized by the city council with the approval of the state board of health and the county commissioners.

2. But the use of such a sewer for sewage purposes, even in a slight degree, would be in derogation of the rights of an abutting land owner whose property would be traversed by the stream into which the sewer empties; and unless the right has been acquired by appropriation, such use may be enjoined by a land owner thus situated without waiting until the threatened injury has resulted in material damage.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

Sewer district No. 27 of the city of Toledo is located upon the west part of the city. A main or front sewer has been projected by the city, extending through said district, for a distance of something over a mile along certain streets and alleys, coming out upon Monroe street, within a few hundred feet of Ottawa creek; thence traversing Monroe street to the creek where it is designed to empty. Breymann & O'Neill are the contractors who are to build this sewer.

Within about 150 feet, or thereabouts, of where the sewer empties, it crosses the city line, and for the remainder of the distance, traverses or continues on Monroe street, which is known, I believe, as the Monroe road outside of the boundaries of the municipality.

The plaintiffs own a tract of eighty acres of land, joining the west line of the city, lying upon both sides of the Monroe road at this point, and upon both sides of Ottawa river, sometimes called Ten Mile creek.

· This is to be a covered sewer of brick construction. For the distance between the city line and the mouth of the sewer, the sewer will be upon the northerly side of the road.

Plaintiff's land is used and occupied for farming, grazing and dairy purposes. The cattle upon the place—and the same is true of adjoining tracts of land—are used to frequent this creek and drink from its waters; and the waters at this point appear to us to be fit for such use. The evidence tends to show that there are sewers emptying into the creek lower down; but none so far up the creek as this proposed sewer.

Plaintiffs seek to enjoin the construction of this sewer, on the ground that its use will pollute the waters of the stream; and upon the further ground that even if they do not so pollute the waters of the stream, this use of the highway is unauthorized and may not be made, unless the right to thus use it shall have been acquired by appropriation proceedings.

There seems to us to be no question but that the city had a right to construct the sewer and to carry it beyond the city limits. But this, of course, leaves unsettled the right of the city as against the private rights of the proprietors of these lands. In other words, the city had the authority to thus proceed, provided it acquires the rights of private proprietors; and it seems to us clear, from the evidence, that the sewer is needed; that it is a public necessity; that the board of health of the state has authorized its construction, and the emptying of it into this creek at this point; and that the county commisioners, in so far as they have authority over the public road, outside of the city limits, have also consented to that use of the public road.

But in so far as the construction of the sewer may infringe upon the private rights of the plaintiffs, of course, the authority exercised by the council, or received from the state board of health, or from the county commissioners, can not affect such private right.

Now, it appears to us, from the evidence, that though this is designed for storm water, or surface water and sewage as well, in all probability it will be some time before the sewage emptying into this sewer will be of a quantity to materially affect, injuriously, the water in the creek; and yet, should it affect it injuriously to any extent, we think that to that extent the plaintiffs have the right to complain, and to that extent it would be laying an additional burden upon the plaintiffs' land, in addition to that of the public easement in the road for road purposes.

The rights of the contractors here can rise no higher than those of the city. But we are of the opinion that the rights of the city, and of the contractors as well, to construct the sewer and to use it for the drainage of surface or storm water are clear, under the law. Not so, however, of the right to use it for sewage purposes.

Without expressing any opinion as to what the public authorities might do in the way of using a public thoroughfare or highway, or the channel of a stream for the location of a sewer to carry water away from private land, we think that the right to so use the same for the purpose of draining roads, streets, highways and the adjacent territory necessary to the preservation or improvement of the public highways, is entirely clear under the law; and that this right, in this instance, extends, not only to the drainage of the Monroe road and Monroe street, but to the drainage of other roads and streets in that locality, that may be drained through and over Monroe street and the Monroe road.

Though the proprietors of these lands, who originally dedicated the part which is now called the Monroe road, may not have actually contemplated the filling up of this adjacent territory with houses and dwellings by the growth of the city, yet we think, in law, that they must be held to have contemplated that, and that no matter how extensive or how numerous the streets, roads and highways laid out in that vicinity, either within the corporate limits or outside the corporate limits, the part of this territory in question known as the Monroe road, lying between the city limits and the creek, has become sub-

servient to the right and easement of the public in the drainage of all such public ways. And in so far as this sewer may be de- signed for such use, we think it is an entirely lawful use of the highway.

It does not appear to us, from the testimony, that there will be in the construction of this sewer any injury to the plaintiff's premises in the way of hindering the access thereto, or in any other way. It seems that the construction will be rather an im- provement than otherwise. Nor does it appear that by the casting of additional fresh water upon the premises at the outlet of this sewer, there will be any injury to the plaintiff's prem- ises. Indeed, it is not claimed that it would be by the plaintiffs or their counsel. That would be rather a benefit than otherwise. The creek at this point in dry seasons becomes nearly dry; at some times the current of the stream stops entirely; and an ad- ditional flow of fresh water, and pure water would be a benefit to the plaintiff's premises than otherwise, so that so long as it is used as a drain for surface water or clear water, or such water as naturally flows from the streets and highways (which, of course, is not entirely pure water, but water of an entirely different character from sewage), we think it may be lawfully so used.

But we are of the opinion that it may not be lawfully used for sewage purposes until the right to so use it has been ac- quired by appropriation proceedings, and that the emptying of sewage should be forbidden without waiting for any *material* damage to the plaintiff's premises. It would be impracticable, and we think an infringement on the plaintiff's rights, to re- quire them to submit to the use of this sewer for sewage pur- poses in ever so small a degree, until the right to thus use it had been acquired. Under the nineteenth section of the Bill of Rights, we think that such use of the plaintiff's premises in ever so small a degree would be a taking of their property, and this taking may not be done until the right is first acquired and paid for.

. The decree of the court will be that the petition will be dis- missed as to the contractors, Breymann & O'Neill. They will be permitted to construct this sewer. The city will be permitted

to use it for the drainage of the streets and highways which it traverses and the streets and highways within the district. But the city will not be permitted to connect any private residences to this sewer, or any bulidings, or any places that would empty sewage into it until it has acquired the right by appropriation proceedings.

We think that the plaintiffs have not proceeded prematurely here; but that they were quite right in proceeding to enjoin this *threatened* injury of their premises; and it is apparent from the attitude of the city here that the city was going ahead to make this, that we regard as an unlawful use of the premises, without first appropriating the right therefor. The costs of the proceeding will be adjudged against the city.

No costs will be adjudged against Breymann & O'Neill. The whole costs will be adjudged against the city. There have been no costs of any consequence made by adding the contractors as parties, and we think for the sake of conformity they should have been and were properly made parties defendants.

*E. M. Beard,* for plaintiffs.

*George N. Fell,* for the City of Toledo.

*W. H. McClellan,* for Breymann & O'Neill.